Neilson, J.
The complaint sets forth that in April last the plaintiff’s son, William, aged eighteen years, resided with his parents ; and charges that the defendant, wrongfully contriving to injure the plaintiff and deprive him of his son’s society and aid, enticed the son from his father’s residence, and sent him to a distant State.
The relief claimed is that the defendant be adjudged to return the son, and to pay one thousand dollars incidental damages.
It appeared on the trial that the defendant is, and for several years has been, the agent of the Brooklyn Children’s Aid Society, a corporation formed in 1866 ; *189 and, acting in connection with a similar organization in the city of New York, is largely engaged in finding Western homes for destitute children ; that applicants for such assistance are examined by the agents of the society, and, if found to have parents or relatives, are required to procure their consent to the removal; that a record is kept of their names, and of their locations in the West; and that local committees in the principal Western towns are formed, to assist the officers of the society in procuring suitable homes for the children.
It further appeared that the plaintiff’s son, assuming the name of William Smith, applied to the defendant to be sent West, stating that he was an orphan, born in Flushing : that upon the death of his parents he had obtained employment in Brooklyn with a pedlar ; that he slept in the barn where the pedlar, who had quit business and left, had kept his horses. Though cared for and well clad at home, he cunningly assumed the appearance of one in want, repeated ids story to the defendant at several interviews, and won his sympathy and confidence. On April 4, last, having left his home, he was taken West by the traveling agent with a party of boys; and, on his arrival at Milton, Randolph County, Mo., accepted employment with Mr. White, a farmer living in that vicinity. The parents, on learning that William had been sent West, applied to the defendant to have the boy returned ; and the defendant sent an instruction for that purpose, with money to defray the expenses of the journey, but William had left for parts unknown.
The effort thus made by the defendant was prompt, earnest and reasonable. But that effort would be no answer to the plaintiff’s claim, if the original receiving and harboring the boy had been wrongful, as charged. The paramount right of parents to the aid and society *190 of their children is respected in all civilized countries, and is jealously guarded by oar laws.
Within well accepted principles, it is necessary, in an action of this character, that the enticing away and harboring of the child should be willful, and with notice or knowledge of the fact that the child has parents or guardians, whose rights are thus invaded. Without such notice or knowledge, an essential element of the wrongful enticement, known to the law, is wanting. The principle involved, either as to the question of pleading, evidence, or judicial determination, is elementary. The words ‘ ‘ entice, ” “ solicit, ” “ persuade, ’ ’ or “ procure,” as used in the pleadings in an action, and acted upon by the courts, have been well defined ; they import an initial, active and wrongful effort.
There is, indeed, a sense in which the operations of this society, with its means of liberal aid, the opportunities it offers to travel, to visit new scenes and find new homes,—very seductive to the youthful imagination,-—may amount to a solicitation ; but the enticement or solicitation thus implied, springs from the very nature of and is incident to the enterprise, has its sanction in the act incorporating this society, is legitimate, and may fairly be contrasted with the wrongful enticement or solicitation of which, either for correction or punishment, the courts take cognizance.
Although in a case like this, the acceptance of a candidate without knowledge of the truth of his story works a great hardship, I am not prepared to hold that no candidate should be thus accepted. The adoption of such a rule might exclude many persons worthy of the charity of this society.
The learned counsel for the plaintiff insists tha,t inquiries should have been made at Flushing, where William said he was born. If the question before me was as to the degree of care and diligence proper to the occasion, I could better appreciate the force of the argument. It may be that careful inquiries at Flush *191 ing would have cast doubt upon the boy’s story and led to his rejection. But if such inquiries had led to no discoveries, yet the boy’s story might have seemed not the less true in every particular. If the first hundred men met with in that town had never seen William Smith, if the postmaster, sheriff, commissioners of the poor, had never heard of him, that would not have beén inconsistent with his truthfulness. The poor and unprotected, not noticeable for improper or criminal conduct, are generally little known, and if known, are soon forgotten.
But the question before me is not as to mere negligence, or as to the best and safest mode of carrying on the operations of this society, but as to a wrongful act— the undue solicitation of this boy to leave his parents ; wrongful conduct which cannot, under the circumstances, be imputed to the defendant.
As the action is for equitable relief, and the costs in the discretion of the court, judgment is ordered, dismissing the complaint without costs.